Good morning. May it please the Court, my name is Katherine Hart and I am the attorney for Petitioner Jerry Wayne Shue Jr. and I would request that two minutes be reserved for rebuttal, though I probably will forget and only reserve one minute. I'll try to remind you. All right, thank you. Your Honors, the standard for reviewing a state court habeas is well defined and it was recently reaffirmed by the United States Supreme Court in Cullen v. Penholster, which was decided in April of 2011. And that standard is that there must be an unreasonable application of Federal law or that there must be an unreasonable determination of facts by the state court judge. And also the standard is that the evidence presented, the new evidence presented, must have been such in which there was a reasonable probability of a different verdict. In this case, the evidence that was either not discovered by trial counsel or inadvertently suppressed by the Merced County District Attorney's Office was the felony conviction of Charlotte Covert, who was basically the star witness, the sinisher of the prosecution's case, the witness who was the one who had all the ammunition, all the evidence, the pivotal witness against my client, and who was allowed to testify with an aura of veracity. Now, the reason that's important to this case is that a thorough reading of the trial transcript does disclose that the deputy district attorney, Tom Cook, who tried this case, made an assiduous attempt to disclose felony convictions and to state at least two times during the trial proceedings that no witness should be allowed to testify with an aura of veracity. There were the felony conviction of my client that was stipulated to, even though he didn't testify, his status of being a convicted felon came out, was stipulated to. There was also the – a witness who was the manager of the bar, the cruise bar, a Mr. Fox, and his felony conviction came out. And also there was a witness, a Patrick Bailey. Patrick Bailey was one of the relatives, a relative who said that the decedent in this case had guns, possessed guns, and was impeached with a prior statement. Counsel, let me just get to the heart of what my concern is with your argument. Of course. And that is what – whether there's any prejudice shown. Because Charlotte's testimony, for the most part, was supportive of your client's theory that he was incredibly intoxicated and therefore hadn't committed murder. He was just too drunk to do that. And her testimony largely supported him. So why would – why would her conviction have made any difference, and why wasn't it reasonable not to want to attack her credibility when, in fact, she was mostly supportive of your theory? Well, I would disagree that she was mostly supportive. And the reason that I say that is because she had given previous statements to previous witnesses, to Detective Stephen Clare and to a Detective Ortiz, had given previous statements on previous occasions in which she talked about how my client had been hit in the chest and had thought had been hit in the chest by the decedent. She also testified that on a previous occasion where Mary Barajas had seen the decedent or Gabriel Barajas had seen the decedent with a weapon, the dispute over the orange trees that you may recall, where the decedent had displayed a weapon and had a weapon, either a rifle or a handgun, she claimed that that was a flashlight. And also she tended at the trial to downplay the level of stumbling and the level of intoxication that my client had displayed the night of the cruise bar, and she had to be impeached on her prior inconsistent statements about his level of intoxication and level of sobriety. She also at the preliminary hearing transcript and on a previous occasion had said that she did not hear my client say, I hope he dies after he left the dwelling. So there are at least four or five places and occasions in which there's extremely important testimony. And also she said that my client came into the dwelling and said that he was going to kill her and that he was going to kill James Colvert, the decedent in this case. Now, the prosecutor argued in final argument to completely disavow the testimony of Mary Barajas, and Mary Barajas had not been convicted of a felony. So although certainly Charlotte Colvert was the only witness to the actual shooting because her son, Ryan, had scooted into the doorway and was back in his bedroom and didn't actually witness the final event, the fact is, is that she tended during the trial to downplay my client's level of intoxication and to claim that she had forgotten certain items and to disagree with items that would have been helpful. The other sort of peculiarity of this case, and I appreciate your commenting on what relevance it might have, and that is that the witness in question is your client's sister, and even if they had not been related, the conviction would have been easily discoverable by counsel as it was a matter of public record. Does that make any difference? Well, it makes a difference in that I'm alleging that there was an injurious wrong that was basically inflicted on my client by the fact that Charlotte Colvert was the only witness with a felony conviction who was not impeached. Right. But he could have figured that out pretty easily. Well, I have argued as a matter of ineffective assistance of counsel that the trial attorney should have discovered that. But was it the obligation of the defendant himself? No, it was the obligation of his attorney to have discovered it. And in a letter that Mr. Dave Capron, the trial attorney, sent to the appellate attorney, Stephen Greenberg, David Capron said that he did not remember the status of Charlotte Colvert's felony conviction. He did not remember it being discussed. And I submit that when you read the trial transcript, which I read twice in the last week, there are these four occasions in the trial transcript where the issues of felony convictions are discussed at Reporters' Transcript 483, 191, 424, 461, and in two places the deputy district attorney says nobody should testify with an aura of veracity had the trial attorney known or had the district attorney known of the felony conviction at that time, then she would have been impeached, because the deputy district attorney is the one who said twice you shouldn't testify with an aura of veracity, and even when he called his own witness, he impeached Mr. Fox with the felony. So in terms of should my client have discovered it, well, that's one of the claims here, is that the trial attorney doing a diligent investigation should have disclosed that, and I think in my opening brief I cited a case, a capital case of Rompilla v. Beard, which is a case where a defendant's attorney failed to discover a defendant's own prior record in which would have gone to assist the attorney in developing a mitigation stance in a capital case. Mr. Hart, you're down to about a minute and a half. Oh, all right. Thank you. I'll reserve the rest of the time. Thank you. Good morning. Good morning, Your Honors. David Andrew Eldridge, deputy attorney general for Respondent. I have no affirmative points that I wish to make in addition to the brief, but I'm happy to answer any questions you want. Is there a duty of the prosecutor to disclose prior convictions of its witnesses? If the prosecution possesses that information, yes, as long as it is impeaching. And a welfare fraud conviction that was a felony would have been. However, we do not know that, A, this was indeed the witness's – we do not know that this witness was indeed Petitioner's sister from the State court record that was in front of the court on – State court on habeas. Further, there is – We do not know that the witness was the appellant's sister. There is – we know the witness was the appellant's sister, but we do not know that the Charlotte Hogan was the same person who testified at trial. We know it is possible. The prior conviction has a different last name than the witness who testified. It does. And it is entirely possible that it was her. I do not know for sure. I have actually, despite my research, I have been able to verify that to my satisfaction personally. But certainly the State court record does not make it clear that this was indeed her. Well, we know that Charlotte was a married woman because the victim was her husband. Yes. It wouldn't be too much of a stretch to say she might have a maiden name, would it? She would. However, her son's name is Hogan as well, which doesn't necessarily suggest that that would be her maiden name rather than a prior. I guess what I'm asking, is it asking too much to ask a witness? Do you have any other names you've used? Are you saying on the stand? I'm saying in preparation for trial. The prosecution or the defense? Yes, the prosecution. In order to make a disclosure. It is – I don't think it would be improper to ask. However, the prosecution doesn't have a duty to investigate whether there is something that should be disclosed. Rather, their duty is to disclose what they have. There is no Supreme Court case authority at all for the concept that you have a duty to know what you could know. Rather, your duty is to disclose what you do know. Well, are you saying that it's permissible for the government to just put on blinders and thereby avoid a Brady violation? Well, the Brady violation only arises when they do know. If you want to say, well, they should have done a better job investigating, that may or may not be so, but there is no constitutional duty for them to do some particular competent level of investigation. The whole concern is what do they know in relation to what the defense knows, not what do they know in relation to what they could have known. There is no Supreme Court authority whatsoever which says they have to do a good investigation. Well, who's they? The prosecution. It's the government, isn't it? I mean, the government prosecuted her. Yes. It wasn't difficult to find out all the other names that she had. Is it your position that the government does not need to inquire as to prior names of witnesses to determine if they had criminal convictions? It is certainly my position that no Supreme Court authority clearly establishes such a duty, Your Honor. Okay. Let's assume that there is a Brady issue here. Is the testimony of Charlotte Covert generally favorable to the defendant or generally unfavorable? It is generally favorable. That was articulated in my brief as well. There are things which it's not clear how the defense could have even brought out other than the defendant himself testifying. And that would have been counterproductive in other ways. So there is strong reason, A, to find there would have been very little benefit to trying to impeach her testimony. The facts here are really bad for the defendant. I mean, yes, there really is no dispute that he was drunk earlier at the bar, but it was more than three hours later when he got to the house. There is no evidence that, no matter how drunk, that whatever level of intoxication he had at the bar had any relevance to his state of mind at the home. And the only evidence there was that could provide any, shed some light favorable toward him on why he showed up later with a gun at 5 o'clock in the morning at the victim's house was his sister's testimony. So there's, on the claim of ineffective assistance, and again, we do not know, by the way, whether or not trial counsel had any of this evidence. There was a marked lack of allegations in the state court petition by a petitioner saying that he didn't have any of this information. All he wants to focus on is what did you disclose. But it's clear that when something is publicly available, there is no disclosure duty because you are not suppressing the evidence by failing to turn over something that he already has access to. Okay. But even if you didn't have the duty to disclose it, what about Ms. Hart's other point that counsel should have found it as ineffective that he didn't unearth this? We do not know that he didn't. There was nothing to show he didn't. Well, if he knew it and didn't use it, isn't that another example of ineffective assistance? I mean, either he didn't discover it, and they're claiming that's ineffective, or he had it and he didn't use it, and they're claiming that's ineffective. That may be even more ineffective if he's got a felony conviction to impeach a witness. We do not know, A, that if this was her conviction, that it even remained a felony. That is articulated in the brief as well. It was a guilty plea, as the record shows, and the contemplation was that it would be reduced to a misdemeanor. And at that time, California law did not make a misdemeanor admissible. Or at a minimum, no reasonable attorney should have expected that it would be. But assuming again that this was her, assuming it remains a felony, there was good reason for counsel not to present this. The argument seems to always be that a felony conviction is always this bombshell as to credibility. It certainly can be negative. It probably would have been somewhat negative. But the fact is it might well have looked desperate here. This witness was the widow of the man that the defendant killed. You can say, well, she has a bias in favor of her husband, but the fact is her husband's dead and she's now testifying against one of her only remaining relatives. So one could argue just as well she has some bias there. And a more, a measured reading of the transcript does not show a witness who somehow had a real axe to grind against the defendant. Rather, it appears she was measured in her responses. She made very favorable statements when, you know, even when she could have, I suppose, shaded it in a more negative way. She didn't. And there is good reason for counsel to decide, some rational attorney to decide, that I'm not going to try to say this witness is not credible. She's too helpful. And even if you wouldn't agree with that on de novo review, most definitely a State court reasonably could conclude that some rational attorney could have taken that approach. Thank you, Your Honor. Roberts. Thank you, Mr. Elbridge. Ms. Hart, back to you. You have about a minute and a half or so. This was a felony conviction. There's no evidence it was ever reduced to a misdemeanor. There is a transcript that said that after 3 years, which would have been the probation period, that the defendant could petition the court for a reduction under California Penal Code 17b1 to a misdemeanor, but that that was no evidence in the record that that was ever done. So my point is it was not reduced to a misdemeanor. It was still a felony conviction because she hadn't petitioned for the reduction, and that even if it had been a misdemeanor, that the Wheeler decision was abrogated by California Evidence Code 452.5 in 1996, and that it would have been admitted as a misdemeanor. But my position is it was a felony conviction. Now, I outlined in the exhibits, in the excerpt of record, tab 23 on page 7, there is a list that shows Charlotte Rose Hogan, Charlotte Rose Hsu, that this is the individual who the police department interviewed and that those were police reports that were in the Merced Superior Court clerk's transcript that went to the Fifth District Court of Appeal. So those were original police reports that showed Charlotte Rose Hogan, Charlotte Rose Hsu. Therefore, either the district attorney's office or the defense attorney should have been able to find out this felony conviction, but I'm putting the onus on the district attorney's office because it was the Merced County district attorney's office that both prosecuted my client and prosecuted Charlotte Hogan. So it was within their ambit, within their knowledge, even if it was a different division of the district attorney's office, it was a welfare fraud division. Have I used up my time? Roberts, anything else, Judge Loon, Judge Graber? No, thank you, Mr. Eldridge, thank you. Case to start, you just submitted.
judges: Silverman, Graber, Cjj Lynn (N. Texas), Dj